UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

RICHARD C. ADLER, M.D.,

    Plaintiff,

v.

JOE F. CHILDERS,

    Claimant.

)
)
)
)
)
)
)
)
)
)
)

Misc. No. 14-01-ART

**MEMORANDUM OPINION
AND ORDER**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

A stable house requires a strong foundation, without which it may crumble. The same can be said of an attorney-client relationship. Plaintiff Richard Adler, M.D. has firsthand experience with both of these phenomena: Dr. Adler hired a lawyer when he discovered faults in his home constructed atop mine spoil. As litigation progressed, Dr. Adler claims that the condition of his property worsened. At the same time, his relationship with his attorney, Joe Childers, also deteriorated. Dr. Adler may be able to recover damages for his investment in his house through litigation. But how may Childers recoup his investment in the now-defunct attorney-client relationship? Under Kentucky law, Childers can collect the fair value of his legal services per the doctrine of *quantum meruit*.

## BACKGROUND

In 2012, Dr. Adler retained Childers's legal services in his suit against a property developer and a construction company. Childers Exhibit 2.[1] The parties agreed that Dr.

---

[1] All citations to exhibits admitted at the evidentiary hearing held on September 26, 2014, begin with the term "Exhibit." All other references to the record in this matter begin with the abbreviation "R." All citations to the

Adler would pay Childers at a rate of $175 per hour and reimburse him for certain litigation costs and expenses. *Id.* The parties also agreed that Childers would collect "20% of any amounts recovered whether by settlement prior to filing suit or after litigation has been commenced." *Id.* Childers testified that he voluntarily accepted this arrangement, although it granted him an hourly fee that was less than his customary billing rate. He explained that he had expected to recover much of the value of his services through the contingency component of this blended fee agreement.

After executing the agreement, Childers committed himself to this complex case. He filed the complaint, conducted discovery, and hired expert witnesses to provide opinions about the construction and location of Dr. Adler's home. Dr. Adler, too, upheld his end of the bargain and paid Childers on a monthly basis as required by the fee agreement. *See* Childers Exhibit 2; Childers Exhibit 5 (noting payments received from Dr. Adler); ECF No. 150-3. The relationship progressed fairly smoothly; Childers guided Dr. Adler through an unsuccessful mediation session and litigated a number of summary judgment motions and motions in limine. In October 2013, however, Dr. Adler stopped paying Childers's fee. Childers Exhibit 5 (indicating that Dr. Adler paid Childers $14,632.02 through October 16, 2013). Nevertheless, Childers continued to represent Dr. Adler, opposing a motion for a jury view and otherwise building the case for trial. *See* ECF No. 121.

After several additional months of trial preparation, the parties began to resurrect settlement talks. On March 22, 2014, Dr. Adler communicated to Childers that he would accept a "bare minimum" settlement of $300,000 plus attorney's fees. Childers testified that

---

record in the main civil action that generated this fee dispute, *Adler v. Elk Glenn, LLC, et al.*, No. 7:12-cv-00085-KKC-EBA (E.D. Ky. 2014), begin with the abbreviation "ECF No."

he agreed to cut his fees to $62,250 based on that representation. *See also* R. 3-5 (Exhibit E to Reply of Joe Childers – Email dated March 26, 2014). Childers explained that this fee reduction strategy made sense given the risk that Dr. Adler may not recover the cost of his house at trial. Childers then initiated settlement conversations with the defendants. On March 28, 2014, Childers told Dr. Adler that the defendants had agreed to the total settlement amount of $362,250. *See* R. 3-6 (Exhibit F to Reply of Joe Childers – Email dated March 28, 2014). He noted that the defendants also agreed to disclose to prospective buyers that the subdivision was built on mine spoil and warn those buyers that they should consult with an engineer before purchasing the property—just like Dr. Adler desired. *Id.* But Dr. Adler was not completely at ease with this settlement. He communicated that he was nervous about Childers's unwillingness to litigate the case. *Id.* (noting that he had a "very strange feeling in the pit of his stomach" because Childers was reluctant to go to trial).

The parties' relationship suffered a fatal blow a few days later. While Childers was on vacation, Dr. Adler learned that the Court dismissed his case from its active docket, but retained jurisdiction over the matter pending consummation of the settlement per its standard procedure. Dr. Adler then emailed Childers, accusing him of dismissing the case without prior approval. *See* R. 3-7 (Exhibit G to Reply of Joe Childers – Email dated April 9, 2014). In his email, Dr. Adler claimed that Childers drafted the settlement agreement in a manner that "adequately protects the defendants alone" and that it was full of provisions that Dr. Adler could not accept. *Id.* He demanded that Childers reinstate the case and claimed that the parties had not reached a settlement. *Id.* At the end of his message, Dr. Adler again referenced Childers' ability to adequately represent him in the litigation. *Id.* ("Finally, to reiterate once again what I repeatedly asked you on previous occasions, if you have any

hidden considerations that prevent you from adequately representing me against Elk Glenn, please let me know . . . .").

Childers explained that he did not ask for the case to be dismissed, and that parties often negotiate subsidiary settlement provisions after agreeing to settle the case. *Id.* Childers also noted that he settled the matter on terms that he had previously presented to Dr. Adler for approval. *Id.* Even after this explanation, Dr. Adler insisted on reinstating the case. He claimed that the inclusion of a confidentiality provision was a "deal breaker" and that his failure to object to settlement terms he previously viewed did not mean he accepted those terms. *Id.* at 3.

In response to Dr. Adler's demands, Childers did not immediately reinstate the case, but rather proceeded in an incremental manner. He notified the defendants of Dr. Adler's decision and then explained to Dr. Adler that the defendants would ask for additional compensation for walking away from the settlement discussions. *See* R. 3-9 (Exhibit I to Reply of Joe Childers – Email dated April 14, 2014). Dr. Adler remained steadfast and instructed Childers to reinstate the case. *Id.* at 2. Dr. Adler even accused Childers of misrepresenting information to the Court. *Id.* Still, Childers hoped he could convince Dr. Adler to accept the settlement. He stated that he would file a motion to reinstate the case that would be accompanied by a motion to withdraw. But Childers refrained from filing such a motion in the hopes that Dr. Adler would change his mind. Before Childers acted, Dr. Adler notified the Court—a full two weeks before the deadline to reinstate the case—that he was without counsel and that he wished to restore the matter to the Court's active docket. ECF No. 125; ECF No. 126. Following this notice, Childers filed a motion to withdraw, indicating that communications with his client had "deteriorated." ECF No. 127. Finally,

Childers filed a motion for attorney's fees and a lien, seeking *quantum meruit* compensation in lieu of a contractual contingency fee. *See* R. 1; R. 3 at 12.

## DISCUSSION

Whether Childers can recover a reasonable fee turns on the circumstances that led to the dissolution of his attorney-client relationship. Where an attorney withdraws without valid cause, he cannot collect any payment under a contingency fee agreement—even through an action for *quantum meruit*. *See Lofton v. Fairmont Specialty Ins. Mgrs., Inc.*, 367 S.W.3d 593 (Ky. 2012). But where the client discharges the attorney or where counsel has good cause to withdraw, he may maintain a *quantum meruit* action for reasonable fees. *Id.* at 597; *Baker v. Shapero*, 203 S.W.3d 697 (Ky. 2006). But what happens when both parties contribute to the breakdown of the relationship? In such circumstances, Kentucky law indicates that an attorney may recover his fees under an action for *quantum meruit*.

**I.     Childers is Entitled to Recoup a Reasonable Fee in an Action For *Quantum Meruit*.**

Dr. Adler argues that the facts of this case fall squarely under *Lofton*. R. 2 at 3–4. He claims that Childers simply withdrew from the representation because he disagreed with Dr. Adler about the value of the case and his choice to reject an inferior settlement. *See id.*; *see also Lofton*, 367 S.W.3d at 596–97 (noting that a "fundamental disagreement" over the value of the case does not permit an attorney to withdraw from the representation for cause and collect fees in *quantum meruit*).

But *Lofton* specifically distinguishes cases where the attorney and client reach "a mutual understanding" as to the settlement goals but the client "later depart[s] from that understanding and adopt[s] a substantially different settlement objective." 367 S.W.3d at

598. And that is what happened in this case. Dr. Adler communicated his main settlement goals—a $300,000 recovery plus attorney's fees—to Childers, who in turn negotiated a settlement for those amounts. *See* R. 3-5 (Exhibit E to Reply of Joe Childers – Email dated March 26, 2014); R. 3-6 (Exhibit F to Reply of Joe Childers – Email dated March 28, 2014). Childers testified that he even managed to negotiate terms requiring the defendants to disclose to prospective buyers that the subdivision was built on mine spoil and warn those buyers that they should consult an engineer before purchasing the property. These provisions were consistent with Dr. Adler's other settlement goals. However, Dr. Adler abruptly rejected the settlement, claiming that he had not agreed to its terms. R. 3-8 (Exhibit H to Reply of Joe Childers – Email dated April 11, 2014). Because Dr. Adler "departed" from the mutual understanding of the main settlement goals by completely repudiating the settlement amount that he initially requested, *Lofton* does not govern this case.

But neither does the Kentucky Supreme Court's decision in *Baker* control—even if *Lofton* is inapposite. The client in *Baker* summarily discharged his attorney without cause. 203 S.W.3d at 698. Here, however, the relationship between Dr. Adler and Childers developed fissures over time. Dr. Adler repeatedly questioned Childers's ability to adequately represent him. *See, e.g.*, R. 3-6 (Exhibit F to Reply of Joe Childers – Email dated March 28, 2014) (questioning Childers about his reluctance to go to trial); R. 3-7 (Exhibit G to Reply of Joe Childers – Email dated April 9, 2014) ("I feel that the only protection I get, if at all, is from the system . . . ."); *id.* ("Finally, to reiterate once again what I repeatedly asked you on previous occasions, if you have any hidden considerations that prevent you from adequately representing me against Elk Glenn, please let me know . . . ."). And Childers did mention that he would file a motion to withdraw. *See* R. 3-9 (Exhibit I to Reply of Joe

Childers – Email dated April 14, 2014). Accordingly, the decision to demolish the attorney-client relationship was not so one-sided as that in *Baker*.

Indeed, the key facts indicate that the attorney-client relationship crumbled on account of both parties' actions. The Kentucky Supreme Court has not spoken directly about how an attorney may recover fees in this circumstance. But in *Kamber v. Abrams*, the Kentucky Court of Appeals found that an attorney may recover in *quantum meruit* where the attorney-client relationship deteriorated on account of mutual fault. 2012 WL 5305735, at *4 (Ky. Ct. App. Oct. 12, 2012) (unpublished). The *Kamber* court established this rule in a case with striking similarities to this one. There, the court noted that the client had "repeatedly questioned" his attorney's ability to effectively represent him. *Id.* Relying on those statements, and a comment where one party "intimated that he intended to end [the] attorney-client relationship," the court found that neither party was "blameless" in destroying the arrangement. *Id.* For this reason, the court determined that the attorney could still recover his reasonable fees under the theory of *quantum meruit*.

The *Kamber* rule should govern here. *See* Ky. CR 76.28; Ky. R. Civ. P. 76.28 ("[U]npublished Kentucky appellate decisions, rendered after January 1, 2003, may be cited for consideration . . . if there is no published opinion that would adequately address the issue before the court."). Relying on this rule makes good sense, as it is consistent with authorities that the Kentucky Supreme Court consults for issues of attorney compensation. *See Lofton*, 367 S.W.3d at 597 (citing 7A C.J.S. Attorney & Client § 360 (noting that "upon an abandonment of [the] contract of employment by an attorney and a client, the attorney may recover the reasonable value of the services . . . rendered")). Under this rule, Childers can recover in *quantum meruit*.

**II.    Childers is Entitled to Recoup All His Reasonable Fees and Expenses Through a Lien Under Kentucky Revised Statutes § 376.460.**

In an action for *quantum meruit*, an attorney may collect fees and expenses in a manner that is untethered to the structure of any previous contract. *See Baker*, 203 S.W.3d at 699 (quoting *Gilbert v. Walbeck*, 339 S.W.2d 450, 451 (Ky. 1960) (holding that in an action for *quantum meruit*, the attorney-client employment contract was "no longer of significance" in determining the fee to which the attorney was entitled)); *Lofton*, 367 S.W.3d at 598 (finding that an attorney could recover the expenses he incurred even though he was not entitled to any fee award); *Bradley v. Lester*, 355 S.W.3d 470, 472 (Ky. Ct. App. 2011) (noting that the "right to recover in *quantum meruit* does not grow out of the contract, but is independent of it") (quoting 17A Am. Jur. 2d Contracts § 200)). Kentucky courts calculate reasonable attorney's fees in *quantum meruit* by multiplying the hours billed by the reasonable hourly rate. *See, e.g.*, *Getty Law Grp., PLLC v. Bowles Rice McDavid Graff & Love, PLLC*, 2011-CA-001393-MR, 2012 WL 6061732 (Ky. Ct. App. Dec. 7, 2012).

How, then, should this Court calculate Childers's reasonable hourly rate? The *Baker* court relied on an earlier Kentucky Supreme Court case that articulates the factors to consider in awarding a *quantum meruit* fee. *See Baker*, 203 S.W.3d at 699 (quoting *Henry v. Vance*, 63 S.W. 273, 276 (Ky. 1901)). The *Vance* court held that a jury should consider "the extent of services . . . rendered" as well as whether the attorney was prevented from accepting other employment. 63 S.W. at 276. Kentucky courts have also considered factors like the "training, knowledge, experience, and reputation" of the attorney, the "benefit to the client," and whether the attorney "financed the litigation, incurred expenses, [or] spent a

substantial amount of time rendering . . . services." *See Getty Law Grp.*, 2012 WL 6061732 at *5; *Gilbert v. Walbeck*, 339 S.W.2d 450, 451 (Ky. Ct. App. 1960).

Here, the evidence indicates that Childers rendered valuable legal services in this complex case due to his experience, expertise, and the time he spent on the matter. Childers testified that he has practiced law for over thirty years and previously received hourly attorney's fees of $300 in federal court. He noted that he developed significant specialized knowledge related to technical matters through his involvement in several federal environmental cases. Harnessing this knowledge, Childers filed the complaint, conducted discovery, interacted with expert witnesses, and researched issues related to geotechnical engineering and property valuation. Childers also facilitated settlement negotiations that closed a gap of over $200,000 between the adversaries. As a result of these efforts, Childers billed 292.33 hours. *See* Childers Exhibit 3 (billing records).

Given Childers's contributions to this litigation, his training and knowledge related to complex litigation, and the technical subject matter of this case, Childers should reasonably recover for the time he spent on the matter at the $300 rate he was previously awarded in federal court. Even under Dr. Adler's estimation, this is a proper approximation of the value of legal services: He testified that it was reasonable to pay his new attorneys $500 an hour. Using the $300 figure in Childers's fee calculation yields a value of $87,699.00 for his entire representation. In addition, Childers should recover the $4,823.21 of unpaid litigation expenses in his *quantum meruit* award. *See Gilbert*, 339 S.W.2d at 451 (noting that a *quantum meruit* award should take into account whether the attorney "financed the litigation" or "incurred expenses"); Childers Exhibit 4 (Itemized log of expenses). However, Dr. Adler has already paid $14,632.02 for the representation. *See* Childers Exhibit 5. Accordingly, Dr.

Adler must pay $77,890.19 to compensate Childers for the remainder of the reasonable value of his services and expenses.

Dr. Adler, however, claims that he may deduct from any *quantum meruit* award additional costs he incurred as a result of the dissolution of the attorney-client relationship. R. 2 at 8–9. But Dr. Adler does not provide any legal support for why he may receive such a deduction if both parties mutually agreed to terminate the attorney-client relationship. And even if Kentucky law permits such a deduction, he cannot obtain one in this case. Why? Because Dr. Adler did not present sufficient evidence for the Court to find that he incurred additional costs on account of Childers's actions. Dr. Adler moved to introduce summaries of billing statements from his new counsel, but did not itemize the expenses or make the original fee statements available for review. *See* R. 6 (Exhibit list from evidentiary hearing indicating that the billing statements were not admitted into evidence). There is no way of knowing whether portions of the payments represent compensation for work that Childers already performed, for new work that Dr. Adler would have needed regardless of who he retained as counsel, or for work on an entirely unrelated matter. Accordingly, Childers may recoup the remainder of his reasonable attorney's fees without any setoff.

Childers claims that in order to collect his fee award, he is entitled to a lien on any proceeds that Dr. Adler recovers while prosecuting his faulty construction claims. R. 1 at 2–3. Kentucky law allows an attorney to secure a lien on his reasonable fee from a prior representation. *See* Ky. Rev. Stat. § 376.460 (stating that "each attorney shall have a lien upon all claims . . . for the amount of any fee agreed upon by the parties or, in the absence of such agreement, for a reasonable fee"). Although the Kentucky Court of Appeals has previously vacated an order enforcing an attorney's fee lien, the court did so because the trial

court improperly calculated the underlying fee award. *See Bradley*, 355 S.W.3d at 472. For that reason, *Bradley* is distinguishable and the plain language of section 376.460 entitles Childers to secure a lien to obtain his fee.

## CONCLUSION

As both attorney Childers and client Dr. Adler mutually dissolved their contractual relationship, any recovery by Childers must lie in *quantum meruit*. And because Childers guided Dr. Adler through various stages of this complex litigation, he merits a reasonable award for his services and unpaid expenses—less the sum Dr. Adler already paid for the representation.

Accordingly, it is **ORDERED** that:

(1)     Joe Childers's motion for attorney's fees, R. 1, is **GRANTED**. Dr. Adler **SHALL PAY** Childers $77,890.19 as reasonable compensation for Childers's legal services in this matter.

(2)     Joe Childers's motion for a lien, R. 1, is **GRANTED** in the amount of $77,890.19. The Clerk shall place a lien in favor of Joe Childers on the litigation in *Richard C. Adler v. Elk Glenn, LLC, et al.*, Civ No. 7:12-085-KKC-EBA (E.D. Ky. 2012).

(3)     Dr. Adler may pay Childers's attorney's fees before he receives a settlement or judgment in his civil action.  In that event, he **MAY FILE** a notice in the record of *Richard C. Adler v. Elk Glenn, LLC, et al.*, Civ No. 7:12-085-KKC-EBA (E.D. Ky. 2012) to discharge the lien.

This the 16th day of October, 2014.

Signed By:

*Amul R. Thapar*

United States District Judge